**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.:

THOMAS B. WELLS, Derivatively on Behalf of MOLYCORP, INC.,

        Plaintiff,

    v.

MARK A. SMITH,
JOHN L. BURBA,
JOHN F. ASHBURN, JR.,
JAMES S. ALLEN,
ROSS R. BHAPPU,
BRIAN T. DOLAN,
ALEC MACHIELS,
MARK S. KRISTOFF,
CHARLES R. HENRY,
JACK E. THOMPSON,
RUSSELL D. BALL,
RCF MANAGEMENT, L.L.C., and
PEGASUS CAPITAL ADVISORS, L.P.,

        Defendants,

   - and -

MOLYCORP, INC., a Delaware corporation,

        Nominal Defendant.

---

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT**

---

Plaintiff, by his attorneys, submits this verified shareholder derivative complaint against the defendants named herein.

## NATURE AND SUMMARY OF THE ACTION

1.     This is a verified shareholder derivative action brought by plaintiff on behalf of nominal defendant Molycorp, Inc. ("Molycorp" or the "Company") against certain of its officers and directors for breaches of fiduciary duties and violations of law.  These wrongs resulted in hundreds of millions of dollars in damages to Molycorp's reputation, goodwill, and standing in the business community.  Moreover, these actions have exposed the Company to hundreds of millions of dollars in potential liability for violations of state and federal law.

2.     Molycorp is the only rare earth oxide ("REO") producer in the Western hemisphere and it owns one of the world's largest, most fully developed rare earth projects outside of China.  REO is essential in many industries, including clean-energy technologies, high-technology applications such as cellular phones and digital music players, critical defense applications, and advanced water treatment.  REO is also used in rechargeable batteries used by hybrid and electric vehicles and magnets in all motor vehicles.

3.     Molycorp is a relatively new public company.  It was purchased by investors from Chevron Corporation in 2008 and went public in July 2010.  Even after Molycorp went public, private equity investors still had significant stock holdings in the Company.  In particular, RCF Management, L.L.C. ("Resource Capital") and Pegasus Capital Advisors, L.P. ("Pegasus") each held 34% of the Company's outstanding common stock.  In addition, Resource Capital and Pegasus are two of four investors in Traxys SA ("Traxys").  This complaint and the Company's public filings treat Traxys' holdings in the Company as being held through Pegasus.  In turn, each of these private equity companies placed representatives on Molycorp's Board of Directors (the "Board").  Resource Capital had its interests in the Company represented on the Board by defendants Ross R. Bhappu ("Bhappu"), the Company's Chairman, and Brian T. Dolan ("Dolan").  Pegasus had its interests represented on the Board by defendant Alec Machiels

("Machiels").  And Traxys had its interests represented on the Board by its Chief Executive Officer ("CEO"), President, and director, defendant Mark S. Kristoff ("Kristoff").  Defendants Bhappu and Machiels also sat on Traxys's board of directors.  ***Thus, four of the Company's eight directors were not independent and disinterested because they owe their loyalty to these private equity firms***.  In addition, numerous insiders had significant stock holdings in the Company.  In order for Pegasus and Resource Capital (as well as others) to make a substantial gain on their investment, the Individual Defendants (as defined herein) embarked on a pump-and-dump scheme that would reap them, and those that control them, more than $1.5 billion in ill-gotten gains.

4.     In order to implement this scheme, defendants made a number of improper statements that inflated the Company's stock price.  The Individual Defendants caused Molycorp to announce a strategic plan entitled "mine-to-magnets."  The mine-to-magnets strategy was a modernization and expansion plan of the Company's primary asset, the Mountain Pass mine.  As part of this plan, the Company's Board approved capacity expansion in addition to its initial modernization and expansion plan.  In order to sell the plan to investors, the Individual Defendants claimed that strong industry fundamentals, including reduced Chinese REO exports and strong pricing increases in REO, were a long-term catalyst that would drive the Company's growth.  Indeed, defendant Mark A. Smith ("Smith"), the Company's CEO, President, and director, stated that the demand and pricing for REO was "very strong."

5.     In February 2011, approximately six months after the Company went public, the lock-up that prevented insiders from selling their significant holdings expired.  With the Company's stock inflated due to positive statements made by defendant Smith and others, the Board approved a secondary stock offering to the public in February 2011.  ***The sale of the common stock in this offering would only go to benefit insiders***.  In the secondary stock offering, defendants John F. Ashburn, Jr. ("Ashburn"), John L. Burba ("Burba"), Kristoff, Smith, and Jack E. Thompson ("Thompson") sold almost $135 million of their individual holdings.  In

addition, Resource Capital and Pegasus sold stock for proceeds of over $753.2 million, or approximately 29% of each of their holdings.

6.      Following the February 2011 secondary stock offering, the defendants continued a campaign of improper statements about the pricing of REO and progress of the Mountain Pass mine expansion.  On June 7, 2011, Molycorp, with the approval of the Board embarked on a secondary offering of 11.5 million shares (including the overallotment) of Molycorp stock. ***Again, no proceeds from this secondary stock offering would benefit the Company***.  Once again, defendants reaped hundreds of millions of dollars in sales of their personally held stock. In particular, defendants Ashburn, Burba, Kristoff, Smith, Thompson, and Charles R. Henry ("Henry") sold more than $122 million of their individual holdings.  In addition, Resource Capital and Pegasus sold stock for proceeds of over $559.6 million, or approximately 29% of each of their holdings.

7.      While the Individual Defendants were making improper statements in the Company's annual statement, earnings press releases, and registration statements, they knew, or were reckless in not knowing, that REO prices were declining because of a lack of demand and inflated prices.  For example, in 2010, a type of REO called Cerium rose 1,256% in a single year. As lack of demand for REO became apparent to the Individual Defendants, they continued to make positive statements on REO demand.

8.      The Individual Defendants' pump-and-dump scheme began to crumble on November 10, 2011, when the Company reported disappointing third quarter 2011 revenues, earnings results below analysts' estimates, and also announced a reduction in Mountain Pass mine production guidance for the fourth quarter of 2011.

9.      Molycorp's market capitalization and stock price fell dramatically as the truth came out.  In total, the Company's stock market capitalization plummeted $3.5 billion, or 56%, from its relevant period high of $6.3 billion in May 2011.  In addition, as a direct result of this unlawful course of conduct, the Company is now the subject of a federal securities class action lawsuit filed in the United States District Court for the District of Colorado on behalf of investors

who purchased Molycorp shares. Meanwhile, the Individual Defendants made more than $1.5 billion in illicit proceeds from the stock sales.

## JURISDICTION AND VENUE

10. Jurisdiction is conferred by 28 U.S.C. §1332. Complete diversity among the parties exists and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

12. Venue is proper in this Court in accordance with 28 U.S.C. §1391(a) because: (i) Molycorp maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Molycorp, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

**Plaintiff**

13. Plaintiff Thomas B. Wells was a shareholder of Molycorp at the time of the wrongdoing complained of, has continuously been a shareholder since that time, and is a current Molycorp shareholder. Plaintiff is a citizen of Michigan.

**Nominal Defendant**

14. Nominal Defendant Molycorp is a Delaware corporation with principal executive offices located at 5619 Denver Tech Center Parkway, Suite 1000, Greenwood Village, Colorado.

Molycorp is an REO producer and owns one of the largest, most fully developed rare earth projects outside of China.  The Company currently produces REOs at its flagship mine and production facility in Mountain Pass, California.  Molycorp, which has offices in the United States, Europe, and Japan, is the only United States-based company that is fully integrated across the rare earth mine-to-magnets supply chain.  Molycorp is named in this Complaint as a nominal defendant solely in a derivative capacity, and this shareholder derivative action is on its behalf.

**Defendants**

15.    Defendant Smith is Molycorp's CEO and a director and has been since October 2008 and President and has been since March 2010.  Smith is also named as a defendant in a securities class action complaint that alleges he violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  Smith knowingly, recklessly, or with gross negligence made improper statements in the Company's press releases and public filings concerning the Company's business prospects, specifically relating to the Mountain Pass mine and the demand for REO.  Smith knowingly, recklessly, or with gross negligence failed to maintain adequate internal controls with respect to Molycorp's financial reporting.  While in possession of material, non-public information concerning Molycorp's true business health, Smith sold 259,260 shares of his stock for $13,137,915 in proceeds.  Molycorp paid Smith the following compensation as an executive:

| Fiscal Year | Salary | Bonus | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2010 | $400,000 | $199,156 | $219,060 | $30,245 | $848,461 |

Smith is a citizen of Colorado.

16.    Defendant Burba is Molycorp's Chief Technology Officer and has been since October 2008 and an Executive Vice President and has been since September 2009.  Burba knowingly, recklessly, or with gross negligence made improper statements in the Company's press releases and public filings concerning the Company's business prospects, specifically relating to the Mountain Pass mine and the demand for REO.  While in possession of material, non-public information concerning Molycorp's true business health, Burba sold 118,982 shares

of his stock for $6,034,857 in proceeds. Molycorp paid Burba the following compensation as an executive:

| Fiscal Year | Salary | Bonus | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2010 | $224,288 | $80,987 | $109,530 | $29,400 | $444,205 |

Burba is a citizen of Colorado.

17.     Defendant Ashburn is Molycorp's Executive Vice President and General Counsel and has been since December 2008. Ashburn was also Molycorp's Secretary from December 2008 to April 2010. Ashburn knowingly, recklessly, or with gross negligence made improper statements in the Company's press releases and public filings concerning the Company's business prospects, specifically relating to the Mountain Pass mine and the demand for REO. While in possession of material, non-public information concerning Molycorp's true business health, Ashburn sold 95,184 shares of his stock for $4,827,804 in proceeds. Molycorp paid Ashburn the following compensation as an executive:

| Fiscal Year | Salary | Bonus | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2010 | $225,208 | $80,987 | $109,530 | $9,800 | $425,525 |

Ashburn is a citizen of Colorado.

18.     Defendant James S. Allen ("Allen") is Molycorp's Chief Financial Officer and has been since December 2009 and Treasurer and has been since March 2010. Allen is also named as a defendant in a securities class action complaint that alleges he violated sections 10(b) and 20(a) of the Exchange Act. Allen knowingly, recklessly, or with gross negligence made improper statements in the Company's press releases and public filings concerning the Company's business prospects, specifically relating to the Mountain Pass mine and the demand for REO. Allen knowingly, recklessly, or with gross negligence failed to maintain adequate internal controls with respect to Molycorp's financial reporting. Molycorp paid Allen the following compensation as an executive:

| Fiscal Year | Salary | Bonus | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| 2010 | $214,583 | $80,987 | $657,180 | $29,400 | $982,150 |

Allen is a citizen of Colorado.

19.     Defendant Bhappu is Molycorp's Chairman of the Board and has been since September 2008.  Defendant Bhappu is a member, shareholder, and director of Resource Capital. Moreover, he is a member of Resource Capital's Investment Committee that makes its investment decisions.   Bhappu is also a director of Traxys, an investor in Molycorp that is owned, in part, by Resource Capital and Pegasus.   Bhappu knowingly or recklessly made improper statements in the Company's press releases and public filings concerning the Company's business prospects, specifically relating to the Mountain Pass mine and the demand for REO.  Bhappu also knowingly or recklessly failed to maintain adequate internal controls with respect to Molycorp's financial reporting.    While in possession of material, non-public information concerning Molycorp's true business health, Bhappu caused Resource Capital to sell 13,769,319 shares of its stock for $694,213,833 in proceeds.   Molycorp paid Bhappu the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Total |
|---|---|---|
| 2010 | $17,500 | $17,500 |

Bhappu is a citizen of Colorado.

20.     Defendant Dolan is a Molycorp director and has been since September 2008. Dolan knowingly or recklessly made improper statements in the Company's press releases and public filings concerning the Company's business prospects, specifically relating to the Mountain Pass mine and the demand for REO.  Defendant Dolan is a member, shareholder, and director of Resource Capital.  Moreover, he is a member of Resource Capital's Investment Committee that makes its investment decisions. Dolan also knowingly or recklessly failed to maintain adequate internal controls with respect to Molycorp's financial reporting.  While in possession of material, non-public information concerning Molycorp's true business health, Dolan caused Resource Capital to sell 13,769,319 shares of its stock for $694,213,833 in proceeds.   Molycorp paid Dolan the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Total |
|---|---|---|
| 2010 | $17,500 | $17,500 |

Dolan is a citizen of Colorado.

21.     Defendant Machiels is a Molycorp director and has been since September 2008. Machiels was also a member of Molycorp's Audit and Ethics Committee from at least February 2011 to at least April 2011.  Defendant Machiels is a partner at Pegasus.  Machiels is also a director of Traxys, an investor in Molycorp that is owned, in part, by Resource Capital and Pegasus.  Machiels knowingly or recklessly made improper statements in the Company's press releases and public filings concerning the Company's business prospects, specifically relating to the Mountain Pass mine and the demand for REO.  Machiels also knowingly or recklessly failed to maintain adequate internal controls with respect to Molycorp's financial reporting.  While in possession of material, non-public information concerning Molycorp's true business health, Machiels caused Pegasus to sell 12,270,073 shares of its stock for $618,730,260 in proceeds. Molycorp paid Machiels the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Total |
|---|---|---|
| 2010 | $17,500 | $17,500 |

Machiels is a citizen of New York.

22.     Defendant Kristoff is a Molycorp director and has been since September 2008. Defendant Kristoff is the CEO, president, and director of Traxys.  Traxys is owned by four shareholders, including defendants Resource Capital and Pegasus.  Kristoff knowingly or recklessly made improper statements in the Company's press releases and public filings concerning the Company's business prospects, specifically relating to the Mountain Pass mine and the demand for REO.  Kristoff also knowingly or recklessly failed to maintain adequate internal controls with respect to Molycorp's financial reporting.  While in possession of material, non-public information concerning Molycorp's true business health, Kristoff sold 4,774,448 shares of his stock for $240,689,588 in proceeds.  Molycorp paid Kristoff the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Total |
|---|---|---|
| 2010 | $20,000 | $20,000 |

Kristoff is a citizen of Connecticut.

23.     Defendant Henry is a Molycorp director and has been since August 2009.  Henry was also a member of Molycorp's Audit and Ethics Committee from at least February 2011 to at least June 2011.  Henry knowingly or recklessly made improper statements in the Company's press releases and public filings concerning the Company's business prospects, specifically relating to the Mountain Pass mine and the demand for REO.  Henry also knowingly or recklessly failed to maintain adequate internal controls with respect to Molycorp's financial reporting.  While in possession of material, non-public information concerning Molycorp's true business health, Henry sold 69,000 shares of his stock for $3,519,000 in proceeds.  Molycorp paid Henry the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Total |
|---|---|---|
| 2010 | $30,000 | $30,000 |

Henry is a citizen of Florida.

24.     Defendant Thompson is a Molycorp director and has been since August 2009.  Thompson was also a member of Molycorp's Audit and Ethics Committee from at least February 2011 to at least June 2011.  Thompson knowingly or recklessly made improper statements in the Company's press releases and public filings concerning the Company's business prospects, specifically relating to the Mountain Pass mine and the demand for REO.  Thompson also knowingly or recklessly failed to maintain adequate internal controls with respect to Molycorp's financial reporting.  While in possession of material, non-public information concerning Molycorp's true business health, Thompson sold 63,706 shares of his stock for $3,213,123 in proceeds.  Molycorp paid Thompson the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Total |
|---|---|---|
| 2010 | $30,000 | $30,000 |

Thompson is a citizen of California.

25.     Defendant Russell D. Ball ("Ball") is a Molycorp director and has been since March 2010.  Ball was also a member of Molycorp's Audit and Ethics Committee from at least February 2011 to at least June 2011.  Ball knowingly or recklessly made improper statements in the Company's press releases and public filings concerning the Company's business prospects, specifically relating to the Mountain Pass mine and the demand for REO.  Ball also knowingly or recklessly failed to maintain adequate internal controls with respect to Molycorp's financial reporting.  Molycorp paid Ball the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2010 | $17,500 | $273,825 | $291,325 |

Ball is a citizen of Colorado.

26.     Defendant Resource Capital is a private equity fund manager that focuses on investments in the mining sector across a range of mineral commodities and geographic regions. During the relevant period, defendants Bhappu and Dolan were partners of Resource Capital and were members of the Resource Capital Investment Committee responsible for decisions regarding investment holdings and dispositions, including the sales of Molycorp common stock. Resource Capital is also an investor in Traxys, a Molycorp shareholder.  While in possession of material, non-public information concerning Molycorp's true business health, Resource Capital sold 13,769,319 shares of its stock for $694,213,833 in proceeds.  Resource Capital is a Delaware limited liability company with principal executive offices located at 1400 Sixteenth Street, Suite 200, Denver, Colorado.

27.     Defendant Pegasus is a private equity firm that works primarily with middle market firms across a variety of industries.  During the relevant period, defendant Machiels was a partner of Pegasus.  Pegasus is also an investor in Traxys, a Molycorp shareholder.  While in possession of material, non-public information concerning Molycorp's true business health, Pegasus sold 12,270,073 shares of its stock for $618,730,260 in proceeds.  Pegasus is a Delaware limited partnership with principal executive offices located at 99 River Road, Cos Cob, Connecticut.

28.     The defendants identified in ¶¶15-18 are referred to herein as the "Officer Defendants."  The defendants identified in ¶¶15, 19-25 are referred to herein as the "Director Defendants."  The defendants identified in ¶¶21, 23-25 are referred to herein as the "Audit and Ethics Committee Defendants."  The defendants identified in ¶¶15-17, 19-23 are referred to herein as the "Insider Selling Defendants."  Collectively, the defendants identified in ¶¶15-25 are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS, RESOURCE CAPITAL, AND PEGASUS

**Fiduciary Duties**

29.     By reason of their positions as officers, directors, and/or fiduciaries of Molycorp and because of their ability to control the business and corporate affairs of Molycorp, the Individual Defendants owed and owe Molycorp and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Molycorp in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Molycorp and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

30.     Each officer and director of the Company owes to Molycorp and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, performance, management, projections, and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

31.     In addition, Resource Capital and Pegasus dominate and control the Board.  Because Resource Capital and Pegasus are the Company's de facto controlling shareholders, they have the same exact fiduciary duties as the Individual Defendants.

**Duties of the Audit and Ethics Committee Defendants**

32.     In addition to these duties, under the Company's Audit and Ethics Committee Charter in effect since August 3, 2010, the Audit and Ethics Committee Defendants, defendants Ball, Henry, Machiels, and Thompson, owed specific duties to Molycorp to review and approve the Company's earnings press releases, guidance, and quarterly and annual financial statements. The Audit and Ethics Committee's Charter provides in relevant part that the Audit and Ethics Committee is responsible for the "integrity of the Company's financial statements" and "compliance with legal and regulatory requirements and the Company's Code of Business Conduct and Ethics."  Moreover, the Audit and Ethics Committee is responsible for reviewing major risk exposures, including the Company's operations risk exposure.

**Code of Business Conduct and Ethics**

33.     In addition to their general duties, under the Company's Code of Business Conduct and Ethics (the "Code"), in effect since August 3, 2010, the all of the Individual Defendants were required to comply with broad ethics principles, including compliance with all laws, rules, and regulations.  Further, the Code contains a conflict of interest policy that requires the Individual Defendants to "avoid situations where [their] private interests interfere in any way with [the] Company's interests."  Despite fiduciary duties that prevent insider trading, the Code also states that the Individual Defendants must not "trade in Company stock on the basis of material, non-public information concerning the Company, nor do [they] 'tip' others who may trade in Company securities."

**Control, Access, and Authority**

34.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of Molycorp, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

35.     Because of their advisory, executive, managerial, and directorial positions with Molycorp, each of the Individual Defendants had access to adverse, non-public information

about the financial condition, operations, and growth prospects of Molycorp. While in possession of this material, non-public information, the Individual Defendants made improper representations regarding the Company, including information regarding: (i) Molycorp's development and expansion of the Mountain Pass mine, which was not progressing on schedule; and (ii) end users had been reducing demand for the Company's products as prices for rare earth elements increased.

36.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Molycorp, and was at all times acting within the course and scope of such agency.

**Reasonable and Prudent Supervision**

37.     To discharge their duties, the officers and directors of Molycorp were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of Molycorp were required to, among other things:

(a)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial health;

(b)     refrain from acting upon material, inside corporate information to benefit themselves;

(c)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(d)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(e)     remain informed as to how Molycorp conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make

reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with securities laws; and

      (f)     ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

**Breaches of Duties**

38.    Each Individual Defendant, by virtue of his position as an officer and/or director, owed to the Company and to its shareholders the fiduciary duty of loyalty and good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of Molycorp, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.  The conduct of the Individual Defendants who were also officers and/or directors of the Company have been ratified by the remaining Individual Defendants who collectively comprised all of Molycorp's Board.

39.    The Individual Defendants breached their duty of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to misrepresent the progress of Molycorp's development and expansion of the Mountain Pass mine, the reduction in the demand for the Company's products, and the Company's inability to deliver certain magnet products to its key customers.  The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions.  In addition, as a result of defendants' illegal actions and course of conduct, the Company is now the subject of a class action lawsuit that alleges violations of securities laws.  As a result, Molycorp has expended, and will continue to expend, significant sums of money.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

40.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

41.     During all times relevant hereto, the Individual Defendants, collectively and individually, initiated a course of conduct that was designed to and did: (i) deceive the investing public, including shareholders of Molycorp, regarding the Individual Defendants' management of Molycorp's operations and the Company's ability to modernize the Mountain Pass mine; (ii) facilitate defendants Bhappu and Dolan (via Resource Capital), Machiels (via Pegasus), Ashburn, Burba, Henry, Kristoff, Smith, and Thompson's illicit sale of over $1.58 billion of their personally held shares while in possession of material, non-public information; and (iii) enhance the Individual Defendants' executive and directorial positions at Molycorp and the profits, power, and prestige that the Individual Defendants enjoyed as a result of holding these positions.  In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants, collectively and individually, took the actions set forth herein.

42.     The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct.  During this time, the Individual Defendants caused the Company to issue improper financial statements.

43.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, and unjust enrichment; and to conceal adverse information concerning the Company's operations, financial condition, and future business prospects.

44.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully or recklessly release

improper statements.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

45.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his overall contribution to and furtherance of the wrongdoing.

## BACKGROUND

46.    Molycorp is the only REO producer in the Western hemisphere.  It owns and operates the one of the world's largest REO manufacturing facilities outside of China.  In 2008, Molycorp Minerals, LLC acquired the Mountain Pass REO mining facility from Chevron Mining Inc. for $80 million.  On July 29, 2010, the Company held an Initial Public Offering ("IPO") and raised $393.8 million.

47.    For years, China had provided over 97% of the world's REO.  But there was speculation that it would be cutting back its production.   However, what the Individual Defendants knew, or were reckless in not knowing, is that the demand for REO and its escalating prices was about to crumble.  On January 11, 2011, *Forbes* published an article titled "Molycorp Looks Like One of The Greatest Private Equity Deals Every."  In that article, defendant Bhappu improperly claimed that REO "prices are sustainable."   Bhappu made this statement despite the fact that Cerium (a type of REO) had risen 1256% in 2009 and only increased in 2010.  The article also stated:

> ***Resource Capital still needs to execute the selling part of this equation while keeping Molycorp successful, a detail not lost on Ross Bhappu***, the Resource Capital partner who put the investment together and is the chairman of Molycorp. "We don't want to count our chickens before they hatch," says Bhappu.

*   *   *

Resource Capital, which exclusively invests in metals and mining, may move soon to start to realize some of its paper gains. The lock-up preventing Molycorp insiders from selling shares expires in February and Bhappu says "if an opportunity arises we would look to monetize some of the position, but we don't want to disrupt the company and the incredible run it has been on."

\*   \*   \*

Is Molycorp part of a rare earth minerals bubble? Could the prices of rare earth elements collapse as quickly as they have risen? "***Given what the Chinese are doing these commodity prices are very sustainable and those prices are well above what we are using in our financial models***," says Bhappu. "It's hard to predict what the sustainable price is for these commodities, but given the supply and demand relationships ***we are pretty comfortable that these prices are sustainable for the near term***."

### IMPROPER STATEMENTS

48.     Shortly after the IPO, the Individual Defendants embarked on a plan to issue improper statements to inflate the stock in order to allow them to begin to monetize their investment in the Company.  In November 2010, defendant Bhappu stated that "if an opportunity arises we would look to monetize some of the position, but we don't want to disrupt the company and the incredible run it has been on ....  We are weighing our options and evaluating them, I don't know that we have made any clear decisions on it yet …. ***If we do sell any shares it would be a relatively small stake***."

49.     Following the IPO, defendants Resource Capital and Pegasus collectively owned over 68% of the Company's outstanding common stock.  Due to trading restrictions, however, the Insider Selling Defendants were "locked-up" from selling any shares until February 2011.  Once the lock-up ended, the Company issued a press release announcing that it would be selling preferred stock and that certain selling stockholders would be conducting a secondary offering of 13.5 million shares of common stock at $50 per share.  Underwriters were provided an additional 2,025,000 shares of common stock to cover over-allotments.

50.     In connection with the secondary stock offering, the Company filed a Form S-1/A Registration Statement (the "February Registration Statement") with the U.S. Securities and Exchange Commission ("SEC").   The February Registration Statement contained improper

statements by defendants Smith, Allen, Ball, Bhappu, Dolan, Henry, Kristoff, Machiels, and Thompson. As stated in the February Registration Statement, Molycorp did "not receive any proceeds from the sale of common stock by the selling stockholders."[1] The principal selling stockholders in the February secondary offering were affiliates of Resource Capital, Pegasus, and Traxys. The Registration Statement highlighted the Company's plans for the expansion of its Mountain Pass mine and the need to obtain funding to support the expansion:

### Our Mine Process and Development Plans

We and SRK Consulting (U.S.), Inc., or SRK Consulting, estimated total proven reserves as of February 6, 2010 of 88.0 million pounds of REO contained in 0.480 million tons of ore, with an average ore grade of 9.38%, and probable reserves of 2.12 billion pounds of REO contained in 13.108 million tons of ore, with an average ore grade of 8.20%, in each case using a cut-off grade of 5.0%, at our Mountain Pass mine. Upon the completion of our initial modernization and expansion plan, which we expect to be completed by the end of 2012, we will have the ability to produce approximately 19,050 mt of REO per year at our Mountain Pass facility. Upon the completion of our recently approved capacity expansion plan, by the end of 2013, we expect to have the ability to produce up to approximately 40,000 mt of REO per year at our Mountain Pass facility, or approximately double the amount we will be able to produce upon completion of our initial plan. Based on our estimated reserves and an expected annual production rate of approximately 19,050 mt of REO under our initial modernization and expansion plan, our expected mine life is in excess of 30 years.

51. The February Registration Statement also touted the purported strengths of Molycorp and its Mountain Pass mining facility:

### Decision to Double Original Planned Production Capacity

We recommenced mining operations in December 2010 and are preparing to recommence milling operations, which we expect to occur in the first quarter of 2012. As of December 2010, we have secured all permits necessary to allow construction to start on the initial modernization and expansion plan. We have

---

[1] The February Registration Statement also provided for a sale of mandatory convertible preferred stock that raised approximately $180 million for the Company.

also entered into a number of construction contracts associated with our initial modernization and expansion plan.

In light of strong industry fundamentals, including reduced Chinese supply and strong pricing increases, our Board of Directors recently approved a second-phase capacity expansion plan in addition to our initial modernization and expansion plan. Upon the completion of this capacity expansion plan, by the end of 2013, we expect to have the ability to produce up to approximately 40,000 mt of REO per year at our Mountain Pass facility, or approximately double the amount we will be able to produce upon completion of our initial plan. Although our production capacity is expected to reach 40,000 mt of REO per year if our capacity expansion plan is successfully completed, we intend to sell our products into the market at a rate commensurate with customer and/or demand growth.

We will commence work on this second phase as we are working on our initial plan. In certain cases, we will not need to add additional equipment in connection with the second phase to provide additional capacity, including milling, but in other cases, including separations and power, we will need to install additional capacity. We do not believe we will need to obtain additional permits, other than air and building permits. We do not expect that work on the second phase will delay completion of our initial modernization and expansion plan, and we continue to expect completion of our initial plan pursuant to our current schedule, subject to obtaining full funding. We have estimated, based on consultation with our project manager, that we will incur approximately $250 million in additional capital costs in connection with the capital expansion plan beyond those budgeted for our initial plan. However, this estimate has not been independently reviewed, and actual costs could vary significantly. We will need to obtain additional funding for such plan. Because we will begin expenditures on the second phase before completion of the initial plan, any funding insufficiency for the second phase could also impact completion of our initial plan. See "Risk Factors — Risks Related to Our Business — We may be unsuccessful in raising the necessary capital to execute our current business plan."

52.     The February secondary offering closed on February 15, 2011.  Defendants Bhappu and Dolan's Resource Capital did not sell "a relatively small stake" in the Company.  In fact, they sold more than $401.1 million, or 29% of its holdings of Molycorp stock in the offering, including the underwriters over-allotments.  In addition, Pegasus sold more than $350 million, or 29% of its holdings, in the February secondary offering.

53.     On March 9, 2011, Molycorp filed it 2010 Form 10-K with the SEC.  Defendants Smith and Allen signed the 2010 Form 10-K pursuant to the Sarbanes-Oxley Act of 2002 ("SOX").  In addition, defendants Smith, Allen, Bhappu, Ball, Dolan, Henry, Kristoff, Machiels,

and Thompson all made improper statements in the 2010 Form 10-K.  The 2010 Form 10-K stated:

### Our Mine Process and Development Plans

We and SRK Consulting (U.S.), Inc., or SRK Consulting, estimated total proven reserves as of February 6, 2010 of 88.0 million pounds of REO contained in 0.480 million tons of ore, with an average ore grade of 9.38%, and probable reserves of 2.12 billion pounds of REO contained in 13.108 million tons of ore, with an average ore grade of 8.20%, in each case using a cut-off grade of 5.0%, at our Mountain Pass mine. ***Upon the completion of our initial modernization and expansion plan, which we expect to be completed by the end of 2012, we expect to have the ability to produce approximately 19,050 mt of REO per year at our Mountain Pass facility***.  Upon the completion of our recently approved capacity expansion plan, by the end of 2013, we expect to have the ability to produce approximately 40,000 mt of REO per year at our Mountain Pass facility, or approximately double the amount we will be able to produce upon completion of our initial plan.  Based on our estimated reserves and an expected annual production rate of approximately 19,050 mt of REO under our initial modernization and expansion plan, our expected mine life is in excess of 30 years.

54.    On or about June 7, 2011, Molycorp filed with the SEC a Form S-1/A Registration Statement (the "June Registration Statement") for the secondary offering of 11.5 million shares (including the overallotment) of Molycorp stock.   The June Registration Statement contained improper statement by defendants Smith, Allen, Ball, Bhappu, Dolan, Henry, Kristoff, Machiels, and Thompson.

55.    The June Registration Statement highlighted the Company's plans for the expansion of its Mountain Pass mine and the need to obtain funding to support the expansion:

### Decision to Double Original Planned Production Capacity

We recommenced mining operations in December 2010 and are preparing to recommence milling operations, which we expect to occur in the first quarter of 2012.  As of December 2010, we have secured all permits necessary to allow construction to start on the initial modernization and expansion plan.  We have also entered into a number of construction contracts associated with our initial modernization and expansion plan.

***In light of strong industry fundamentals, including reduced Chinese supply and strong pricing increases, our Board of Directors recently approved a second-phase capacity expansion plan in addition to our initial modernization and***

*expansion plan*.  Upon the completion of this capacity expansion plan, by the end of 2013, we expect to have the ability to produce up to approximately 40,000 mt of REO per year at our Mountain Pass facility, or approximately double the amount we will be able to produce upon completion of our initial plan....

We will commence work on this second phase as we are working on our initial plan. In certain cases, we will not need to add additional equipment in connection with the second phase to provide additional capacity, including milling, but in other cases, including separations and power, we will need to install additional capacity.  We do not believe we will need to obtain additional permits, other than air and building permits.  We do not expect that work on the second phase will delay completion of our initial modernization and expansion plan, and we continue to expect completion of our initial plan pursuant to our current schedule, subject to obtaining full funding.  We have estimated, based on consultation with our project manager, that we will incur approximately $250 million in additional capital costs in connection with the capital expansion plan beyond those budgeted for our initial plan.  However, this estimate has not been independently reviewed, and actual costs could vary significantly.  We will need to obtain additional funding for such plan.

56.     The Registration Statement also touted the purported strengths of Molycorp and its Mountain Pass mining facility:

**We have a proven source of REOs with high-grade ore and long reserve life**.

Prior to the end of the last mining campaign at the Mountain Pass facility in 2002, the mine had been in continuous operation for over 50 years.  Since our acquisition of the Mountain Pass facility, we have been processing stockpiled feedstocks as part of our ongoing effort to significantly improve our solvent extraction technologies and other processing capabilities.  Today, based on estimated total proven reserves of 88.0 million pounds of REO contained in 0.480 million tons of ore, with an average ore grade of 9.38%, and probable reserves of 2.12 billion pounds of REO contained in 13.108 million tons of ore, with an average ore grade of 8.20%, in each case using a cut-off grade of 5.0%, the Mountain Pass mine has a life in excess of 30 years at an annual production rate of approximately 19,050 mt of REO.  Our leadership team is committed to the continuous and sustainable manufacture of rare earth products at the Mountain Pass facility using advanced milling and processing technologies that will significantly increase the life of the known ore body at the Mountain Pass facility.  Additionally, in 2010, we expanded our on-site exploratory drilling program to confirm the existence and extent of bastnasite, monazite and other rare earth phosphate mineral occurrences in unexplored areas of the Mountain Pass facility.

57.     In connection and simultaneously with the June 7, 2011 secondary offering, numerous insiders reported the sale of $700 million in Molycorp stock, including Resource Capital and Pegasus, which sold more than $559.6 million of stock, or approximately 30% of each of their remaining holdings of Molycorp common stock.

58.     On August 11, 2011, Molycorp filed its Form 10-Q with the SEC.  Defendants Smith and Allen signed the Form 10-Q pursuant to SOX.  The Form 10-Q stated:

### Our Mine Process and Development Plans

We recommenced mining operations in December 2010 and are preparing to recommence milling operation, which we expect to occur in the first quarter of 2012.  Recommencement of mining and milling operations is coincident with our initial modernization and expansion plan, which will give us the capacity to efficiently produce at a rate of approximately 19,050 mt of REO per year by the end of 2012.  Additionally, upon the completion of our capacity expansion plan, we expect to have the ability to produce up to approximately 40,000 mt of REO per year by the end of 2013.  Prior to the expected completion of our initial modernization and expansion efforts at Mountain Pass, we expect to produce approximately 3,000 mt to 5,000 mt per year in the aggregate of cerium products, lanthanum concentrate, didymium oxide and heavy rare earth concentrates from stockpiled feedstock.

### THE TRUTH BEGINS TO EMERGE

59.     The truth behind the Company's business prospects and Individual Defendants' wrongdoing began to emerge only a month later, on September 20, 2011.  On that date, J.P. Morgan securities analysts, Michael F. Gambardella, Tyler J. Langton, and Brian P. Ossenbeck, cut the target price of Molycorp by almost half.   The analysts downgraded the Company due to lower demand for REO.  This caused the Company's stock market capitalization to decline $969.8 million, or almost 22%.

60.     Then, on November 10, 2011, the Company reported disappointing third quarter 2011 revenues and earnings results below analysts' estimates and announced a reduction in Mountain Pass mine production guidance for the fourth quarter of 2011 due to expected equipment downtime relating to Mountain Pass mine engineering and expansion issues.

61.     On this news, Molycorp's market capitalization plunged again more than $3.5 billion, 56%, compared to the its high of $6.3 billion approximately a month before the secondary offering that the Individual Defendants sold hundreds of millions of dollars of stock in.

62.     On January 17, 2012, Scott Matusow with *seekingalpha.com* published an article titled "Don't Buy Into The Hype, which lambasted the Insider Selling Defendants' stock sales.  In particular, the article stated:

> I first heard of Molycorp back in the summer of 2011 when a fellow investor brought it to my attention. The stock price at that time was around $55 a share. I decided to do some basic D[ue] D[iligence] on the company and ***found what I considered to be red flags everywhere. I began my DD by first looking at the insider transactions***;

> \* \* \*

> We can clearly see almost every insider sold their shares at around 50 dollars.

> How much profit did most of these insiders make?

> ***Insiders bought near the lows in 2010 when this stock first arrived on the NYSE. Most insiders bought at $14 a share.  Why did all the insiders purchase massive amounts of shares at $14? Something smells wrong here***.

> But who can blame them for selling? They had huge profits from $14 to $50 a share. ***The major red flag here is that only 2 of them bought back any shares***. How confident were these guys about their own company if they did not "flip" their shares? I know if I had confidence in my company's future, I would certainly buy back shares after taking massive profit, wouldn't you?

> This was the first red flag for me with Molycorp.

> Molycorp's big buzz was over their purchase of their Mountain Pass mine in California. Molycorp suggested that this mine would yield billions in rare earth metals once they raised enough money via public offerings to get it back online safely using the latest green technologies.

> \* \* \*

> I began to think to myself; "Why would California allow this mine to come back online when they are overwhelmingly liberal minded, environmentally friendly regulators?"

*Now I was getting a better picture why insiders were not buying back into their company. They had the same doubts I was having about their mine ever being able to produce anything substantial.*

This was another huge red flag for me. I went to the stock boards to see what people were saying. It was pure madness in exuberance, as next to no one was seeing what I was seeing with Molycorp. Most were talking about how rich they will become. Others were saying how Molycorp would go past $500 a share. I was shocked - I know bubble talk when I see it.

63.    On February 6, 2012, Travis Hoium published an article titled "Molycorp Making Head-Scratching Deals," which criticized management's insider sales.  The article stated:

Molycorp (NYSE: MCP ) continues to sell shares as fast as it can before it churns out any real production. I'm beginning to wonder why management is so eager to sell shares if the company is in such a strong position.

* * *

**Foolish bottom line**

I've been saying for over a year now that rare-earth mineral prices were going to fall off a cliff when more supply comes online. Prices are clearly falling, with Lynas' average production composition down nearly 50% since the end of the third quarter. Molycorp looks like a company desperate to squeeze as much out of others as it can until its opens production and we find out it isn't making as much money as we once thought it would. I would stay away from this stock because prices will keep falling as more supply keeps coming on the market.

## REASONS THE STATEMENTS WERE IMPROPER

64.    The statements concerning the Company's business prospects, specifically relating to the Mountain Pass mine and the demand for REO were each improper when made because they failed to disclose and misrepresented the following material, adverse facts, which the Individual Defendants knew, consciously disregarded, or were reckless in not knowing:

(a)    Molycorp's development and expansion of the Mountain Pass mine was not progressing on schedule and would not allow the Company to reach stated REO production rates at the end of calendar 2012 and 2013;

(b)    End users had been reducing demand for the Company's products as prices for rare earth elements increased; and

- 24 -

(c)     The lack of progress in development and expansion of the Mountain Pass mine made it difficult, if not impossible, for the Company to produce and deliver certain magnet products to its key customers.

**INSIDER SALES**

65.     Rather than providing the market with correct information, the Insider Selling Defendants used their knowledge of Molycorp's material, non-public information to sell their personal holdings while the Company's stock was artificially inflated.  As officers and directors of Molycorp, defendants Bhappu, Dolan, Machiels, Kristoff, Smith, Burba, Ashburn, Henry, and Thompson were privy to material, non-public information about the Company's true business health.

66.     Bhappu and Dolan are both on Resource Capital's Investment Committee that makes its investment decisions.  As such, they are directly responsible for Resource Capital's sales that were timed to maximize profit from Molycorp's then artificially inflated stock price.  While in possession of this knowledge, defendants Bhappu and Dolan caused defendant Resource Capital to sell 13,769,319 shares of its directly held Molycorp stock for proceeds of nearly $700 million.  Resource Capital's sales are suspicious given that its stock sales represented 49.87% of its holdings as demonstrated by the chart below:

| | |
|---|---|
| Shares Sold During Sales Period ("SP") | 13,769,319 |
| Shares Remaining After Sales | 13,843,863 |
| Total Shares Before Sales | 27,613,182 |
| **Total Proceeds from Sales** | **$694,213,833.00** |
| **% of Total Ownership Sold During SP** | **49.87%** |

67.     Machiels is a partner at Pegasus.  Pegasus's sales were timed to maximize profit from Molycorp's then artificially inflated stock price.  While in possession of this knowledge, defendant Machiels caused defendant Pegasus to sell 12,270,073 shares of its directly held Molycorp stock for proceeds of over $600 million.  Pegasus's sales are suspicious given that its stock sales represented 50.13% of its holdings as demonstrated by the chart below:

| | |
|---|---|
| Shares Sold During SP | 12,270,073 |

| | |
|---|---|
| Shares Remaining After Sales | 12,205,363 |
| Total Shares Before Sales | 24,475,436 |
| **Total Proceeds from Sales** | **$618,730,260.00** |
| **% of Total Ownership Sold During SP** | **50.13%** |

68. While in possession of this knowledge, defendant Kristoff sold 4,774,448 shares of his personally held Molycorp stock for proceeds of over $240 million. Kristoff's sales were timed to maximize profit from Molycorp's then artificially inflated stock price. Kristoff's sales are suspicious given that his stock sales represented 52.2% of his holdings as demonstrated by the chart below:

| | |
|---|---|
| Shares Sold During SP | 4,774,448 |
| Shares Remaining After Sales | 4,372,702 |
| Total Shares Before Sales | 9,147,150 |
| **Total Proceeds from Sales** | **$240,689,588.00** |
| **% of Total Ownership Sold During SP** | **52.20%** |

69. While in possession of this knowledge, defendant Smith sold 259,260 shares of his personally held Molycorp stock for proceeds of over $13 million. Smith's sales were timed to maximize profit from Molycorp's then artificially inflated stock price. Smith's sales are suspicious given that his stock sales represented 21.76% of his holdings as demonstrated by the chart below:

| | |
|---|---|
| Shares Sold During SP | 259,260 |
| Shares Remaining After Sales | 931,951 |
| Total Shares Before Sales | 1,191,211 |
| **Total Proceeds from Sales** | **$13,137,915.00** |
| **% of Total Ownership Sold During SP** | **21.76%** |

70. While in possession of this knowledge, defendant Burba sold 118,982 shares of his personally held Molycorp stock for proceeds of over $6 million. Burba's sales were timed to maximize profit from Molycorp's then artificially inflated stock price. Burba's sales are suspicious given that his stock sales represented 34.74% of his holdings as demonstrated by the chart below:

| | |
|---|---|
| Shares Sold During SP | 118,982 |
| Shares Remaining After Sales | 223,505 |
| Total Shares Before Sales | 342,487 |

| | |
|---|---|
| **Total Proceeds from Sales** | **$6,034,857.00** |
| **% of Total Ownership Sold During SP** | **34.74%** |

71.    While in possession of this knowledge, defendant Ashburn sold 95,184 shares of his personally held Molycorp stock for proceeds of over $4.8 million.  Ashburn's sales were timed to maximize profit from Molycorp's then artificially inflated stock price.  Ashburn's sales are suspicious given that his stock sales represented 35.31% of his holdings as demonstrated by the chart below:

| | |
|---|---|
| Shares Sold During SP | 95,184 |
| Shares Remaining After Sales | 174,352 |
| Total Shares Before Sales | 269,536 |
| **Total Proceeds from Sales** | **$4,827,804.00** |
| **% of Total Ownership Sold During SP** | **35.31%** |

72.    While in possession of this knowledge, defendant Henry sold 69,000 shares of his personally held Molycorp stock for proceeds of over $3.5 million.  Henry's sales were timed to maximize profit from Molycorp's then artificially inflated stock price.  Henry's sales are suspicious given that his stock sales represented 51.34% of his holdings as demonstrated by the chart below:

| | |
|---|---|
| Shares Sold During SP | 69,000 |
| Shares Remaining After Sales | 65,401 |
| Total Shares Before Sales | 134,401 |
| **Total Proceeds from Sales** | **$3,519,000.00** |
| **% of Total Ownership Sold During SP** | **51.34%** |

73.    While in possession of this knowledge, defendant Thompson sold 63,706 shares of his personally held Molycorp stock for proceeds of over $3.2 million.  Thompson's sales were timed to maximize profit from Molycorp's then artificially inflated stock price.  Thompson's sales are suspicious given that his stock sales represented 47.93% of his holdings as demonstrated by the chart below:

| | |
|---|---|
| Shares Sold During SP | 63,706 |
| Shares Remaining After Sales | 69,195 |
| Total Shares Before Sales | 132,901 |
| **Total Proceeds from Sales** | **$3,213,123.00** |
| **% of Total Ownership Sold During SP** | **47.93%** |

74.     In sum, defendants Bhappu and Dolan (through Resource Capital), Machiels (through Pegasus), Kristoff, Smith, Burba, Ashburn, Henry, and Thompson sold over $1.58 billion worth of stock was sold at artificially inflated prices as detailed by the chart below.  The Insider Selling Defendants sold this stock at nearly *double* the price that the Company's stock trades at today.

| Insider Last Name | Transaction Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| ASHBURN | 2/16/2011 | 26,580 | $50.00 | $1,329,000.00 |
| | 6/15/2011 | 68,604 | $51.00 | $3,498,804.00 |
| | | **95,184** | | **$4,827,804.00** |
| | | | | |
| BHAPPU AND DOLAN | 2/16/2011 | 6,976,383 | $50.00 | $348,819,150.00 |
| | 3/16/2011 | 1,045,053 | $50.00 | $52,252,650.00 |
| | 6/15/2011 | 5,747,883 | $51.00 | $293,142,033.00 |
| | | **13,769,319** | | **$694,213,833.00** |
| | | | | |
| BURBA | 2/16/2011 | 33,225 | $50.00 | $1,661,250.00 |
| | 6/15/2011 | 85,757 | $51.00 | $4,373,607.00 |
| | | **118,982** | | **$6,034,857.00** |
| | | | | |
| HENRY | 6/15/2011 | 69,000 | $51.00 | $3,519,000.00 |
| | | **69,000** | | **$3,519,000.00** |
| | | | | |
| KRISTOFF | 2/16/2011 | 120,782 | $50.00 | $6,039,100.00 |
| | 2/16/2011 | 2,339,028 | $50.00 | $116,951,400.00 |
| | 3/16/2011 | 19,252 | $50.00 | $962,600.00 |
| | 3/16/2011 | 328,198 | $50.00 | $16,409,900.00 |
| | 6/15/2011 | 49,704 | $51.00 | $2,534,904.00 |
| | 6/15/2011 | 1,917,484 | $51.00 | $97,791,684.00 |
| | | **4,774,448** | | **$240,689,588.00** |
| | | | | |
| MACHIELS | 2/16/2011 | 6,113,616 | $50.00 | $305,680,800.00 |
| | 3/16/2011 | 929,847 | $50.00 | $46,492,350.00 |
| | 6/15/2011 | 5,226,610 | $51.00 | $266,557,110.00 |
| | | **12,270,073** | | **$618,730,260.00** |
| | | | | |
| SMITH | 2/16/2011 | 72,749 | $50.00 | $3,637,450.00 |
| | 3/16/2011 | 11,596 | $50.00 | $579,800.00 |
| | 6/15/2011 | 63,956 | $51.00 | $3,261,756.00 |
| | 6/15/2011 | 110,959 | $51.00 | $5,658,909.00 |
| | | **259,260** | | **$13,137,915.00** |
| | | | | |
| THOMPSON | 2/16/2011 | 35,883 | $50.00 | $1,794,150.00 |

| | 6/15/2011 | 27,823 | $51.00 | $1,418,973.00 |
|---|---|---|---|---|
| | | 63,706 | | $3,213,123.00 |
| | | | | |
| Total: | | 31,419,972 | | $1,584,366,380.00 |

## DAMAGES TO MOLYCORP

75.     As a result of the Individual Defendants' improprieties, Molycorp disseminated improper, public statements concerning its Mountain Pass mine modernization plan.  These improper statements have devastated Molycorp's credibility as reflected by the Company's almost $3.5 billion, or 56%, market capitalization loss.

76.     Further, as a direct and proximate result of the Individual Defendants' actions, Molycorp has expended, and will continue to expend, significant sums of money.  Such expenditures include, but are not limited to:

(a)     costs incurred from defending and paying any settlement in the class action for violations of federal securities laws; and

(b)     costs incurred from compensation and benefits paid to the defendants who have breached their duties to Molycorp.

77.     Moreover, these actions have irreparably damaged Molycorp's corporate image and goodwill.  For at least the foreseeable future, Molycorp will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in improper behavior and have misled the investing public, such that Molycorp's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

78.     Plaintiff brings this action derivatively in the right and for the benefit of Molycorp to redress injuries suffered, and to be suffered, by Molycorp as a direct result of breaches of fiduciary duty, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  Molycorp is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

79.     Plaintiff will adequately and fairly represent the interests of Molycorp in enforcing and prosecuting its rights.

80.     Plaintiff was a shareholder of Molycorp at the time of the wrongdoing complained of, has continuously been a shareholder since that time, and is a current Molycorp shareholder.

81.     The current Board of Molycorp consists of the following eight individuals: defendants Smith, Bhappu, Dolan, Machiels, Kristoff, Henry, Thompson, and Ball.  Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

**Demand Is Excused Because the Director Defendants' Conduct Is Not a Valid Exercise of Business Judgment**

82.     Defendants Smith, Bhappu, Dolan, Machiels, Kristoff, Henry, Thompson, and Ball's challenged misconduct is a breach of the duty of loyalty that they owe to the Company. As the ultimate decision-making body of the Company, the Board affirmatively adopted, implemented, and condoned a business strategy based on a deliberate plan to pump-and-dump the Company's stock that benefited themselves and certain private equity investors that they work for and/or have an interest in, including Resource Capital and Pegasus.  Causing the Company to engage in the improper tactics that threaten it with significant damage is not a protected business decision and such conduct can in no way be considered a valid exercise of business judgment.  Accordingly, demand on the Board is excused.

**Demand Is Excused Because Defendants Smith, Bhappu, Dolan, Machiels, Kristoff, Henry, Thompson, and Ball Face a Substantial Likelihood of Liability for Their Misconduct**

83.     As alleged above, defendants Smith, Bhappu, Dolan, Machiels, Kristoff, Henry, Thompson, and Ball breached their fiduciary duties of loyalty by making improper statements in the Company's February and June Registration Statements, 2011 Form 10-K, Forms 10-Q, and press releases.  These statements improperly misrepresented the Company's only primary asset, the Mountain Pass mine.

84.     Defendants Ball, Henry, Machiels, and Thompson, as members of the Audit and Ethics Committee, reviewed and approved the improper statements in the SEC filings and press releases.    The Audit and Ethics Committee's Charter provides that it is responsible for compliance with accounting, legal, and regulatory requirements.    Thus, the Audit and Ethics Committee Defendants were responsible for knowingly or recklessly allowing the improper statements related to the Company's Mountain Pass mine, future business prospects, and disclosure controls.    Moreover, the Audit and Ethics Committee Defendants reviewed and approved the improper SEC filings and press releases made to the public.    Despite their knowledge or reckless disregard, the Audit and Ethics Committee Defendants caused these improper statements.    Accordingly, the Audit and Ethics Committee Defendants breached their fiduciary duty of loyalty and good faith because they participated in the wrongdoing described herein.    Thus, the Audit and Ethics Committee Defendants face a substantial likelihood of liability for their breach of fiduciary duties so any demand upon them is futile.

**Demand Is Excused Because Defendants Smith, Bhappu, Dolan, Machiels, Kristoff, Henry, Thompson, and Ball Face a Substantial Likelihood of Liability for Insider Sales**

85.     Defendants Kristoff, Smith, Henry, and Thomson sold Molycorp stock under highly suspicious circumstances.    Kristoff, Smith, Henry, and Thomson as directors, possessed material, non-public Company information and used that information to benefit themselves. Kristoff, Smith, Henry, and Thomson sold stock based on this knowledge of material, non-public Company information regarding the Company's Mountain Pass mine and the impending decrease in the value of their holdings of Molycorp.    Accordingly, Kristoff, Smith, Henry, and Thomson face a substantial likelihood of liability for breach of their fiduciary duty of loyalty.    Any demand upon Kristoff, Smith, Henry, and Thomson is futile.

86.     Defendants Bhappu and Dolan, through their management, positions on the Investment Committee, and ownership interest in defendant Resource Capital, sold Molycorp stock under highly suspicious circumstances.    Bhappu and Dolan, as directors, possessed material, non-public Company information and used that information to benefit Resource

Capital. Bhappu and Dolan caused Resource Capital to sell its stock based on this knowledge of material, non-public Company information regarding the Company's inability to modernize the Mountain Pass mine on the timeline provided to the public and the impending decrease in the value of Resource Capital's holdings of Molycorp. Accordingly, Bhappu and Dolan face a substantial likelihood of liability for breach of their fiduciary duty of loyalty. Any demand upon Bhappu and Dolan is futile.

87.     Defendant Machiels, as a partner of defendant Pegasus, sold Molycorp stock under highly suspicious circumstances. Machiels, as a director, possessed material, non-public Company information and used that information to benefit Pegasus. Machiels caused Pegasus to sell its stock based on this knowledge of material, non-public Company information regarding the Company's inability to modernize the Mountain Pass mine on the timeline provided to the public and the impending decrease in the value of Pegasus's holdings of Molycorp. Accordingly, Machiels faces a substantial likelihood of liability for breach of his fiduciary duty of loyalty. Any demand upon Machiels is futile.

**Demand Is Excused Because Defendants Kristoff, Bhappu, Machiels, and Dolan are Not Independent or Disinterested**

88.     Defendants Kristoff, Machiels, and Bhappu are also incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action given that they serve on the board of Traxys together. Traxys primarily focuses on the marketing and sourcing of base metals and concentrates, minor and alloying metals, industrial minerals and chemicals, materials for steel mills and foundries, and carbon products. Defendant Kristoff is the CEO, president, and a director of Traxys. Defendants Machiels and Bhappu have both been directors of Traxys since January 2006 and January 2007, respectively. Traxys was one of the initial investors in Molycorp, partnering with Resource Capital Funds, Pegasus Partners, Goldman Sachs, and the Carint Group to acquire Molycorp from Chevron in 2008. Traxys is jointly owned by its four shareholder partners: Traxys Management, Pegasus, Kelso & Company, and Resource Capital Funds. Due to their intertwining businesses and investment,

defendants Kristoff, Machiels, and Bhappu are incapable of independently and disinterestedly considering a demand.

89.    Defendants Bhappu and Dolan are Resource Capital members, shareholders, directors, and members of its Investment Committee.   Resource Capital owns a portion of Traxys.   Thus, Dolan and Bhappu are not independent of Kristoff, Traxys's CEO, president, and a director.   Due to their intertwining businesses and investments, defendants Kristoff, Bhappu, and Dolan are incapable of independently and disinterestedly considering a demand.   Thus, demand is futile upon Kristoff, Bhappu, and Dolan.

90.    In addition, because Pegasus owns a portion of Traxys, defendant Machiels, a Pegasus partner, is not independent of Kristoff, Traxys' CEO, president, and a director.   Due to their intertwining businesses and investment, defendants Kristoff and Machiels are incapable of independently and disinterestedly considering a demand.   Thus, demand is futile upon Kristoff and Machiels.

**The Board is Dominated by Resource Capital and Pegasus**

91.    Defendants Bhappu, Dolan, Machiels, and Kristoff are four of eight directors and they all face a substantial likelihood of liability for trading on the basis of non-public information.   In addition, Bhappu, Dolan, Machiels, and Kristoff face a substantial likelihood of liability for making improper statement and failing to implement adequate controls.   Resource Capital and Pegasus also face a substantial likelihood of liability for trading on the basis of non-public information.   Resource Capital and Pegasus provided much of the seed money to purchase the Company and expand its Mountain Pass mine.   Resource Capital and Pegasus have used their control to appoint Board members that would be loyal to them and act in their interests as opposed to the Company's.   Through Bhappu, Dolan, Machiels, and Kristoff, Resource Capital and Pegasus dominate and control the Board, and therefore, making a demand upon the Board is futile.

**Defendant Smith is Not Independent and Disinterested**

92.     The principal professional occupation of defendant Smith is his employment with Molycorp, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits as alleged above.  Accordingly, Smith lacks independence from defendants Bhappu, Dolan, Machiels, Kristoff, Henry, Thompson, and Ball due to his interest in maintaining his executive position at Molycorp.   This lack of independence renders Smith incapable of impartially considering a demand to commence and vigorously prosecute this action.  Molycorp paid Smith the following compensation:

| Fiscal Year | Salary | Bonus | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2010 | $400,000 | $199,156 | $219,060 | $30,245 | $848,461 |

Accordingly, Smith is incapable of impartially considering a demand to commence and vigorously prosecute this action because he has an interest in maintaining his principal occupation and the substantial compensation he receives in connection with that occupation. Demand is futile as to Smith.

93.     Moreover, the acts complained of constitute violations of the fiduciary duties owed by Molycorp's officers and directors and these acts are incapable of ratification.

94.     Each of the defendant directors of Molycorp authorized and/or permitted the improper statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the improper statements and are principal beneficiaries of the wrongdoing alleged herein and, thus, could not fairly and fully prosecute such a suit even if such suit was instituted by them.

95.     Molycorp has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct

to attempt to recover for Molycorp any part of the damages Molycorp suffered and will suffer thereby.

96.     If Molycorp's current and past officers and directors are protected against personal liability for their acts of mismanagement and breach of fiduciary duty alleged in this Complaint by directors and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, i.e., monies belonging to the stockholders of Molycorp. However, the directors' and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by Molycorp against these defendants, known as the "insured versus insured exclusion."  As a result, if these directors were to cause Molycorp to sue themselves or certain of the officers of Molycorp, there would be no directors and officers' insurance protection and thus, this is a further reason why they will not bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery.  If there is no directors and officers' liability insurance, then the current directors will not cause Molycorp to sue the defendants named herein, since they will face a large uninsured liability and lose the ability to recover for the Company from the insurance.

97.     Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the current Board has failed and refused to seek to recover for Molycorp for any of the wrongdoing alleged by plaintiff herein.

98.     Plaintiff has not made any demand on the other shareholders of Molycorp to institute this action since such demand would be a futile and useless act for at least the following reasons:

(a)     Molycorp is a publicly held company with over 83.8 million shares outstanding and thousands of shareholders;

(b)     making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses, or phone numbers of shareholders; and

(c)     making demand on all shareholders would force plaintiff to incur excessive expenses, assuming all shareholders could be individually identified.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duty

99.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

100.    The Individual Defendants owed and owe Molycorp fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe Molycorp the highest obligation of good faith, fair dealing, loyalty, and due care.

101.    The Individual Defendants and each of them, violated and breached their fiduciary duties of candor, good faith, and loyalty.  More specifically, the Individual Defendants violated their duty of good faith by creating a culture of lawlessness within Molycorp, and/or consciously failing to prevent to Company from engaging in the unlawful acts complained of herein.

102.    The Officer Defendants either knew, were reckless, or were grossly negligent in disregarding the illegal activity of such substantial magnitude and duration.  The Officer Defendants either knew, were reckless, or were grossly negligent in not knowing: (i) the Mountain Pass mine would be delayed; and (ii) that demand for REO was declining. Accordingly, the Officer Defendants breached their duty of care and loyalty to the Company.

103.    Director Defendants, as directors of the Company, owed Molycorp the highest duty of loyalty.  These defendants breached their duty of loyalty by recklessly permitting the improper statements concerning the Company's business prospects.  Defendants Smith, Bhappu, Dolan, Machiels, Kristoff, Henry, Thompson, and Ball knew or were reckless in not knowing that: (i) the Mountain Pass mine would be delayed; and (ii) that demand for REO was declining. Accordingly, defendants Smith, Bhappu, Dolan, Machiels, Kristoff, Henry, Thompson, and Ball breached their duty of loyalty to the Company.

104.   The Audit and Ethics Committee Defendants, defendants Machiels, Henry, Thompson, and Ball, breached their fiduciary duty of loyalty by approving the statements described herein which were made during their tenure on the Audit and Ethics Committee, which they knew or were reckless in not knowing contained improper statements and omissions.  The Audit and Ethics Committee Defendants completely and utterly failed in their duty of oversight, and defendants Machiels, Henry, Thompson, and Ball, failed in their duty to appropriately review financial results and comply with regulatory and legal requirements, as required by the Audit and Ethics Committee Charter in effect at the time.

105.   Defendants Bhappu, Dolan, Machiels, Smith, Burba, Ashburn, Kristoff, Henry, and Thompson breached their duty of loyalty by selling Molycorp stock on the basis of the knowledge of the improper information described above before that information was revealed to the Company's shareholders.  The information described above was proprietary, non-public information concerning the Company's future business prospects.  It was a proprietary asset belonging to the Company, which defendants Bhappu, Dolan, Machiels, Smith, Burba, Ashburn, Kristoff, Henry, and Thompson used for their own benefit when they sold Molycorp common stock.

106.   As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Molycorp has sustained significant damages, as alleged herein.  As a result of the misconduct alleged herein, these defendants are liable to the Company.

107.   Plaintiff, on behalf of Molycorp, has no adequate remedy at law.

## COUNT II

### Against the Individual Defendants for Waste of Corporate Assets

108.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

109.   As a result of the improper statements the Company by failing to conduct proper supervision, the Individual Defendants have caused Molycorp to waste its assets by paying

improper compensation and bonuses to certain of its executive officers and directors that breached their fiduciary duty.

110.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

111.    Plaintiff, on behalf of Molycorp, has no adequate remedy at law.

### COUNT III

### Against the Individual Defendants for Unjust Enrichment

112.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

113.    By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Molycorp.  The Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to Molycorp.

114.    Defendants Bhappu, Dolan, Machiels, Smith, Burba, Ashburn, Kristoff, Henry, and Thompson, sold Molycorp stock while in possession of material, adverse non-public information that artificially inflated the price of Molycorp stock.  As a result, defendants Bhappu, Dolan, Machiels, Smith, Burba, Ashburn, Kristoff, Henry, and Thompson profited from their misconduct and were unjustly enriched through their exploitation of material and adverse inside information.

115.    Plaintiff, as a shareholder and representative of Molycorp, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

116.    Plaintiff, on behalf of Molycorp, has no adequate remedy at law.

## COUNT IV

**Against Defendants Resources Capital and Pegasus for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information and Against Defendants Bhappu, Dolan, and Machiels for Aiding and Abetting the Breach of Fiduciary Duty**

117.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

118.    At the time of the stock sales set forth herein, defendants Resources Capital (where defendants Bhappu and Dolan sat on the Investment Committee) and Pegasus (where defendant Machiels was a partner) knew the truth about the improper statements regarding the Company's Mountain Pass mine and business prospects. Defendants Bhappu, Dolan, and Machiels participated in the issuance of the improper statements that intended to drive up the Company's stock price.

119.    Defendants Bhappu and Dolan capitalized on the Company's stock peak by compelling defendant Resources Capital to sell 13,769,319 shares of Molycorp stock for proceeds of $694,213,833 while Molycorp stock was artificially inflated.

120.    Defendant Machiels capitalized on the Company's stock peak by compelling defendant Pegasus to sell 12,270,073 shares of Molycorp stock for proceeds of $618,730,260 while Molycorp stock was artificially inflated.

121.    As members, shareholders, directors, and members of the Investment Committee defendants Bhappu and Dolan directed defendant Resources Capital to sell Molycorp common stock before the improper information described above was revealed to the Company's shareholders in September 2011.

122.    As a partner of defendant Pegasus, defendant Machiels directed Pegasus to sell Molycorp common stock before the improper information described above was revealed to the Company's shareholders in September 2011.

123.    The information described above was proprietary, non-public information concerning the Company's future business prospects.  It was a proprietary asset belonging to the Company.  Defendants Bhappu and Dolan used the propriety information for defendant Resource

Capital's own benefit.   Defendants Machiels used the propriety information for defendant Pegasus's own benefit.

124.     Since the use of the Company's proprietary information for the gain of defendants Resource Capital and Pegasus constitutes a breach of defendants Bhappu, Dolan, and Machiels's fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits defendants Resources Capital, Pegasus, Bhappu, Dolan, and Machiels's obtained thereby.

125.     Plaintiff on behalf of Molycorp has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of Molycorp, demands judgment as follows:

A.     Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

B.     Directing Molycorp to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Molycorp and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote, resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote of the following Corporate Governance Policies:

1.     a provision to control insider selling;

2.     a provision to limit the influence of the Company's private equity investors' influence on the Board;

3.     a proposal to create a committee to independently review REO demand and pricing;

4.     a proposal to create a committee to advise the Board on the expansion of the Mountain Pass mine;

5.     a proposal to strengthen the Company's controls over financial reporting;

6.     a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

7.     a provision to permit the shareholders of Molycorp to nominate at least three candidates for election to the Board; and

8.     a proposal to strengthen Molycorp's oversight of its disclosure procedures;

C.     Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Molycorp has an effective remedy;

D.     Awarding to Molycorp restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants, including all ill-gotten gains from insider selling by defendants;

E.     Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 21, 2012

ROBBINS UMEDA LLP
BRIAN J. ROBBINS
GEORGE C. AGUILAR
ASHLEY R. PALMER


/s/ Brian J. Robbins
BRIAN J. ROBBINS

600 B Street, Suite 1900
San Diego, CA 92101
Telephone:  (619) 525-3990
Facsimile:  (619) 525-3991
brobbins@robbinsumeda.com

gaguilar@robbinsumeda.com
apalmer@robbinsumeda.com

THE BRISCOE LAW FIRM, PLLC
WILLIE BRISCOE
8117 Preston Road, Suite 300
Dallas, TX  75225
Telephone: (214) 706-9314
Facsimile:  (214) 706-9315
wbriscoe@thebriscoelawfirm.com

POWERS TAYLOR LLP
PATRICK POWERS
8150 N. Central Expressway
Suite 1575
Dallas, TX 75206
Telephone: (214) 239-4565
Facsimile: (214) 550-2635
patrick@powerstaylor.com

Attorneys for Plaintiff

Plaintiff:

THOMAS B. WELLS
258 Stillwater Drive
Buchanan, MI 49107

699204

VERIFICATION

I, Thomas B. Wells, hereby declare as follows:

I am the plaintiff in the within entitled action. I have read the Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment. Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted:

Dated: 2/15/12

THOMAS B. WELLS